UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

United States of America,

     v.                                          Crim. Action No. 2:95-cr-72
                                                               No. 2:02-cr-23

William Greer,

          Defendant.

## REPORT AND RECOMMENDATION
(No. 2:95-cr-72 Doc. 895, No. 2:02-cr-23 Doc. 98)

William Greer, proceeding *pro se*, has moved under 28 U.S.C. § 2255 to vacate his 1997 and 2002 convictions in this District, claiming that this Court lacked jurisdiction over his prosecution for federal drug offenses and contempt of court.  Greer and several co-defendants were convicted by a jury in 1997 for engaging in a conspiracy to import and export hashish and marijuana.  *United States v. Greer*, 285 F.3d 158, 162 (2d Cir. 2002); (No. 2:95-cr-72 Doc. 418).  In 2002, Greer pleaded guilty to additional drug trafficking charges and willful disobeyance of a court order.  At a consolidated sentencing on March 14, 2003 pertaining to both his 1997 and 2002 convictions, Greer was sentenced to significant time in prison and ordered to pay a fine of $500,000.  (No. 2:95-cr-72 Doc. 807.)  Greer filed a Notice of Appeal *pro se* in the Second Circuit Court of Appeals which was subsequently dismissed as a result of Greer's failure to comply with the court's scheduling order.  (No. 2:95-cr-72 Docs. 835, 874.)

Greer now seeks to vacate his sentences, claiming that the federal courthouse where he was tried and sentenced was not properly ceded to the United States.  (No. 2:95-cr-72 Doc. 895 at 2.)  According to Greer, the allegedly improper cession means that "the Court lacked jurisdiction to prosecute [him] and lacked the jurisdiction to sentence" him.  (*Id.*)  The Government responds that Greer's § 2255 motion is untimely and procedurally defaulted.  The Government also argues that Greer's motion is without merit because the Court has original and exclusive jurisdiction over all violations of federal law.  For the reasons set forth below, I recommend that Greer's § 2255 motion be DENIED.

<u>**Factual Background**</u>

**I.      Offense Conduct**

**A.      1997 Convictions**

From 1980 to 1993, Greer conspired with others to import and export thousands of pounds of hashish and marijuana across the Vermont-Canada border by using backpacks, boats, snowmobiles, all-terrain vehicles, and airplanes.  *Greer*, 285 F.3d at 163.  The conspiracy was led by Dutch and Canadian organizations, which shared in the profits and directed operations.  *Id.*  In July 1996, a nine-count superseding indictment was filed and Greer was tried in early 1997.  *Id.*; (No. 2:95-cr-72 Doc. 188.)  At the close of the evidence, a jury found Greer guilty of one count of conspiracy to import and export a controlled substance, *see* 21 U.S.C. §§ 952, 960, 963, one count of conspiracy to distribute and possess with intent to distribute hashish on board a vessel subject to the jurisdiction of the United States, *see* Maritime Drug Law Enforcement Act (MDLEA), 46 U.S.C. App. § 1903, and one count of failing to report the international transportation of

2

currency, *see* 31 U.S.C. §§ 5316(a)(1)(A), 5322(b).  Then-Chief Judge William K.

Sessions III sentenced Greer to 324 months of imprisonment.  *Greer*, 285 F.3d at 163.

Greer appealed the sentence and his case was remanded for resentencing in light of

*Apprendi v. New Jersey*, 530 U.S. 466 (2000).  *Id.* at 162.

### B.      The 2002 Convictions

The Government subsequently learned that while Greer was on trial between

March 11, 1997 and May 31, 1997, he continued to transport illegal drugs across the

border.  Specifically, Greer and several co-conspirators smuggled marijuana into

Vermont from Canada on approximately five occasions.  (No. 2:02-cr-23 Doc. 1 at 3.)

Greer was indicted on additional charges, and in November 2002, he pleaded guilty to

conspiracy to import marijuana and willful disobeyance of court orders.  (No. 2:02-cr-23

Doc. 70 at 1.)  Resentencing for Greer's 1997 convictions was consolidated with

sentencing for the 2002 convictions, and Greer was sentenced in March 2003 to 180

months on the 1997 convictions and 216 months on the 2002 convictions to run

concurrently.  (*Id.* at 2.)  He was also fined $500,000.  (*Id.* at 5.)

### Discussion

A person in custody under a sentence of a federal court may seek to vacate that

conviction under 28 U.S.C. § 2255(a) if (1) the sentence was imposed in violation of the

Constitution or laws of the United States, (2) if the court was without jurisdiction to

impose such a sentence, (3) the sentence was in excess of the maximum authorized by

law, or (4) the sentence is otherwise subject to collateral attack.  Despite the broad

language of Section 2255(a), motions that allege violations of federal law are only

3

cognizable if they involve a "fundamental defect which inherently results in a complete miscarriage of justice." *Davis v. United States*, 417 U.S. 333, 346 (1974) (quoting *Hill v. United States*, 368 U.S. 424, 429 (1962)).  The Supreme Court has defined a "miscarriage of justice" as a claim of actual innocence.  *See United States v. Olano*, 507 U.S. 725, 736 (1993).

Greer contends that the Court must vacate his sentence because the property on which the United States District Court for the District of Vermont sits was not properly ceded to the United States.  Specifically, he contends that because the courthouse lacks a "customs house," the Court was without jurisdiction to try and sentence him.  (No. 2:95-cr-72 Doc. 895 at 2.)  In support of this argument, Greer points to a legislative act that dates to 1854 ("1854 Act") in which the Vermont legislature ceded land to the United States for the purposes of "erect[ing] . . . a building for a custom house, post office and United States court room."  1854 Vt. Acts & Resolves 48-49; (No. 2:95-cr-72 Doc. 895-4 at 3).  The 1854 Act further provided that the building "shall keep therein said custom house and post office."  *Id.*  According to Greer, because the District of Vermont does not currently have a custom house and lacked one at the time he was prosecuted, it follows that the United States breached the terms of the 1854 cession, rendering it invalid.  (No. 2:95-cr-72 Doc. 895 at 2.)  As a result, Greer argues, the Court lacked jurisdiction during the criminal proceedings against him and his convictions are therefore "void."  (*Id.*)  Greer further argues that he received ineffective assistance of counsel, because a "competent" attorney would have "search[ed] for and discover[ed] this matter."  (No. 2:95-cr-72 Doc. 898 at 2.)

4

The Government contends that Greer's petition is untimely.  Alternatively, the Government argues that Greer's jurisdictional "custom house" claim is procedurally defaulted because he failed to raise it on direct review, and that, in any event, his claims lack merit.

For the reasons set forth below, I recommend that the Court deny Greer's petition because it is untimely.  I further conclude, in the alternative, that Greer's jurisdictional claim is procedurally defaulted and that all of his claims lack merit.

## I.      Greer's Petition is Untimely

The Government argues that Greer's petition must fail because he did not file it within the applicable statute of limitations.  The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") created a one-year statute of limitations in which federal prisoners may file an application for a writ of habeas corpus.  28 U.S.C. § 2255(f).  In pertinent part, the statute states:

A 1-year period of limitation shall apply to a motion under this section.  The limitation period shall run from the latest of:

(1) the date on which the judgment of conviction becomes final;

(2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;

(3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255(f).

In this case, the judgment of conviction and commitment was entered on March 17, 2003.  (No. 2:95-cr-72 Doc. 807.)  Greer filed a direct appeal *pro se* (No. 2:95-cr-72 Doc. 835), but the appeal was dismissed on March 14, 2007 because he failed to file his brief and appendix in accordance with the Second Circuit Court of Appeals' scheduling order, (No. 2:95-cr-72 Doc. 874).  Greer filed the instant motion on April 11, 2011, well beyond the expiration of the one-year deadline.  (No. 2:95-cr-72 Doc. 895.)  Subsection (1) of § 2255(f) therefore bars his motion.  Greer sets forth no allegations to suggest that subsections (2) and (3) of § 2255(f) have any application here.  Finally, subsection (4) does not save Greer's untimely motion.  The facts supporting Greer's claim could have been discovered by Greer through the exercise of due diligence at an earlier date.  Indeed, Greer does not argue that he encountered any specific difficulty in determining that there was no custom house or any delay in response to inquiries he made with state authorities. (No. 2:95-cr-72 Doc. 895 at 2.)

In arguing for a contrary result, Greer asserts that he could not have raised his custom house argument before the one-year statute of limitations expired because "this issue was basically buried in files and forgotten . . . several decades ago."  (No. 2:95-cr-72 Doc. 898 at 2.)  In "rare and exceptional circumstances," courts may toll the one-year limitations period based upon equitable considerations.  *Baldayaque v. United States*, 338 F.3d 145, 151 (2d Cir. 2003) (quoting *Smaldone v. Senkowski*, 273 F.3d 133, 138 (2d Cir. 2001)).  In order to merit equitable tolling, the petitioner would have to show reasonable

diligence during the time he wishes to have tolled, and that "extraordinary circumstances beyond his control prevented successful filing during that time." *Id*.

Here, Greer has failed to proffer evidence of an "extraordinary" circumstance sufficient to explain the delay in filing his petition. The circumstances faced by Greer— unfamiliarity with legal matters and difficulty obtaining legal documents and information—are consistent with the ordinary difficulties experienced by all prisoners. *See Corrigan v. Barbery*, 371 F. Supp. 2d 325, 330 (W.D.N.Y. 2005) ("[T]he difficulties attendant on prison life, such as . . . restricted access to the law library, and an inability to secure court documents, do not by themselves qualify as extraordinary circumstances."); *Fennel v. Artuz*, 14 F. Supp. 2d 374, 377 (S.D.N.Y. 1998) (noting that a lack of education and unfamiliarity with legal research do not warrant equitable tolling). Further, despite Greer's general claim that the 1854 Act was "buried" in files, he has failed to identify any specific facts supporting that the 1854 Act was effectively unattainable during the limitations period and that this circumstance caused him to miss the filing deadline. *Harper v. Ercole*, No. 10-178-pr, 2011 WL 3084962, at *9 (2d Cir. July 26, 2011) ("To secure equitable tolling, it is not enough for a party to show that he experienced extraordinary circumstance. He must further demonstrate that those circumstances caused him to miss the original filing deadline.").

Finally, Greer argues that the one-year limitations period does not apply here because jurisdiction may be challenged "at any stage and even after appeals are final." (No. 2:95-cr-72 Doc. 895 at 3.) Greer's argument, however, is contrary to the text of § 2255. Section 2255(a) provides that a prisoner who claims the right to be released "upon

7

the ground that . . . the court was without jurisdiction to impose such sentence . . . may move the court which imposed the sentence to vacate, set aside or correct the sentence." Subsection (f), however, states that "[a] 1-year period of limitations shall apply to a motion under this section."  28 U.S.C. § 2255(f).  Subsection (f) makes clear that the limitations period applies to all motions under the statute and that no exception exists for motions challenging the Court's jurisdiction.  *See Barreto-Barreto v. United States*, 551 F.3d 95, 100 (1st Cir. 2008).

## II.   Greer's Jurisdictional Claim is Procedurally Defaulted

The Government next argues that Greer's petition fails because he did not raise his custom house claim on direct appeal.  "Habeas review is an extraordinary remedy and will not be allowed to do service for an appeal."  *Bousley v. United States*, 523 U.S. 614, 621 (1998) (quoting *Reed v. Farley,* 512 U.S. 339, 354 (1994)); *see United States v. Munoz*, 143 F.3d 632, 637 (2d Cir. 1998) ("A motion under § 2255 is not a substitute for an appeal.").  Accordingly, the general rule is that a claim not raised on direct appeal is procedurally defaulted and may not provide the basis for § 2255 relief absent a demonstration of cause and prejudice or actual innocence.  *See Zhang v. United States*, 506 F.3d 162, 166 (2d Cir. 2007).  Here, Greer's direct appeal of his sentence was dismissed on March 14, 2007 for failure to comply with the briefing schedule and he has raised no claim of actual innocence.  (No. 2:95-cr-72 Doc. 874.)  Thus, to avoid procedural default, Greer must demonstrate both cause and prejudice.

"'[C]ause' under the cause and prejudice test must be something external to the petitioner, something that cannot fairly be attributed to him . . . ."  *Coleman v. Thompson*,

501 U.S. 722, 753 (1991) (emphasis omitted).  Greer offers no excuse for his failure to

obtain knowledge of the 1854 Act or his lack of awareness that the District of Vermont

contained no custom house other than the fact that the information dated to over a century

ago.  The fact that the information was old, however, does not establish that it was

unavailable.  In addition, the date of the 1854 Act does not establish any reason why

Greer failed to argue its applicability on direct appeal.  Parties routinely litigate issues

arising from historic acts and treaties.  *See, e.g.*, *New Jersey v. New York*, 523 U.S. 767,

772 (1998) (contesting the language of an 1808 act ceding territorial jurisdiction of Ellis

Island from the State of New York to the United States); *Ohio v. Kentucky*, 444 U.S. 335,

338 (1980) (disputing the language of various acts of Kentucky and Virginia ceding areas

of the Ohio River to the United States dating to the eighteenth and nineteenth centuries);

*United States v. Fields*, 516 F.3d 923, 929 (10th Cir. 2008) (disputing the terms of

Oklahoma's 1925 cession of territorial jurisdiction over a forest area to the United

States).  Thus, Greer has not met his burden of establishing sufficient cause for his failure

to raise the argument on direct appeal.

When a petitioner has failed to establish cause for his procedural default, the Court

need not determine whether he suffered prejudice since both cause and prejudice must be

shown.  *Stepney v. Lopes*, 760 F.2d 40, 45 (2d Cir. 1985); *Long v. Lord*, No. 03-CV-0461

NFM, 2006 WL 1977435, at *6 (N.D.N.Y. Mar. 21, 2006).  In any event, as set forth

below, Greer suffered no prejudice as a result of his failure to raise the jurisdictional

claim on direct appeal because the claim is without merit.

### III.    Greer's Claims Lack Merit

### A.    Jurisdictional Claim

Greer argues that a breach of the terms of the 1854 Act of cession necessarily renders the Court without jurisdiction to try and sentence him.  Greer cites to no authority which establishes that federal court proceedings must be held only on property properly ceded to the United States in order to be legitimate.  To the contrary, statutory law indicates otherwise.  28 U.S.C. § 126 provides that "[c]ourt shall be held at Bennington, Brattleboro, Burlington, Montpelier, Rutland, Saint Johnsbury, and Windsor."  The statute does not require that court must be held in a federal courthouse building or in any specific location with specific amenities, such as a custom house, in the named towns.

Moreover, failure to properly cede the courthouse building located at 11 Elmwood Avenue in Burlington to the United States would not cause the Court to lose its original and exclusive jurisdiction over federal crimes in general or over Greer's criminal proceedings in particular.  Under Article I, Section 8 of the United States Constitution, the powers of Congress include the general power to create define, and punish crimes and offenses.  *See United States v. Comstock*, 130 S. Ct. 1949, 1957-58 (2010).  Pursuant to this power, Congress vested jurisdiction and venue over federal crimes in the federal courts, and United States District Courts have exclusive and original jurisdiction over all offenses against the laws of the United States.  18 U.S.C. § 3231 ("The district courts of the United States shall have original jurisdiction, exclusive of the courts of the States, of all offenses against the laws of the United States.").

The Court's original and exclusive jurisdiction over federal offenses is not limited to crimes which occur on federally-owned property, nor does the statute require a state's permission for federal prosecution. *United States v. Gerhard*, 615 F.3d 7, 25-26 (1st Cir. 2010). Courts have rejected such jurisdictional arguments, similar to the one Greer raises here, as without merit and even frivolous. *See id*; *United States v. Pujols-Tineo*, No. 05-137-04 S, 06-025 S, 2011 WL 884461, at *4-5 (D.R.I. Mar. 11, 2011) (inmate's claim that the court lacked jurisdiction "because the property on which [the crime] occurred was not owned or administered by the federal government" deemed a "silly claim"); *Daniels v. United States*, No. 10-00495 HG-BMK, 2011 WL 864706, at *3 (D. Haw. Mar. 9, 2011) (defendant's offenses need not be committed on federal land in order to constitute offenses against the United States for purposes of subject matter jurisdiction); *United States v. Ferguson*, No. 1:07-CR-70, 2008 WL 80011, at *2 (E.D. Tex. Jan. 7, 2008) (Government need not establish state cession of jurisdiction over the property where the federal offense occurred).

Here, this Court retained jurisdiction over Greer's drug-related offenses, including conspiracy to import and export a controlled substance, *see* 21 U.S.C. §§ 952, 960, 963, conspiracy to distribute and possess with intent to distribute hashish on board a vessel subject to the jurisdiction of the United States, *see* MDLEA, 46 U.S.C. App. § 1903, and failing to report the international transportation of currency, *see* 31 U.S.C. §§ 5316(a)(1)(A), 5322(b). This Court had jurisdiction to try and sentence Greer pursuant to Congress' constitutional authority to establish the Court's jurisdiction over federal crimes by statute. 18 U.S.C. § 3231. The Court's jurisdiction remains unaffected by the lack of

a custom house at 11 Elmwood Avenue or by an otherwise improper cession of the federal courthouse property.

### B. Ineffective Assistance of Counsel

Greer argues that his attorney was not "competent enough to search for and discover" the fact that the federal courthouse lacked a custom house. (No. 2:95-cr-72 Doc. 895 at 2.) Because of his counsel's deficient performance, Greer argues, he "was disadvantaged and subsequently prejudiced due to the lack of jurisdiction." (No. 2:95-cr-72 Doc. 898 at 2.)

A criminal defendant asserting that an attorney was constitutionally deficient must show that the lawyer's performance "fell below an objective standard of reasonableness" and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984). The standard of *Strickland* "is rigorous, and the great majority of habeas petitions that allege constitutionally ineffective counsel founder on [it]." *Lindstadt v. Keane*, 239 F.3d 191, 199 (2d Cir. 2001). A Section 2255 petition is not an opportunity to second guess sound strategy. *See Strickland,* 466 U.S. at 689 ("[T]he defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.") (quotation omitted).

The essence of an ineffective assistance claim is that counsel's unprofessional errors so upset the adversarial balance between defense and prosecution that the trial was rendered unfair and the verdict rendered suspect. *See Kimmelman v. Morrison*, 477 U.S. 365, 374 (1986). Thus, a defendant must establish (1) that counsel made errors so serious

that he was deprived of reasonably competent representation and (2) that counsel's deficient performance prejudiced the defense. *See Hernandez v. United States*, 202 F.3d 486, 488 (2d Cir. 2000) (citing *Strickland*, 466 U.S. at 687-91).

In considering an ineffectiveness claim, the Court must presume that counsel has "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment;" and that "counsel's conduct f[ell] within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689-90.  Finally, "[t]he reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions.  Counsel's actions are usually based, quite properly, on informed strategic choices made by the defendant and on information supplied by the defendant." *Id.* at 691.

In this case, Greer's counsel did not err in failing to investigate whether the federal courthouse was properly ceded to the United States.  As set forth above, any claim that this Court lacked jurisdiction because the courthouse did not maintain a custom house is without merit.  Accordingly, Greer did not receive constitutionally deficient representation on this basis and Greer can show no prejudice resulting from counsel's failure to raise a meritless argument.

## Conclusion

Based on the foregoing, I recommend that Greer's motion to vacate, set aside, or correct his sentence (No. 2:95-cr-72 Doc. 895, No. 2:02-cr-23 Doc. 98) be DENIED.

13

Dated at Burlington, in the District of Vermont, this 17th day of August, 2011.


                                              /s/ John M. Conroy
                                              John M. Conroy
                                              United States Magistrate Judge


        Any party may object to this Report and Recommendation within fourteen days
after service thereof, by filing with the Clerk of the Court and serving on the Magistrate
Judge and all parties, written objections which shall specifically identify those portions of
the Report and Recommendation to which objection is made and the basis for such
objections.  See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2), 6(a), 6(d); L.R. 72(c).
Failure to timely file such objections operates as a waiver of the right to appellate review
of the District Court's adoption of such Report and Recommendation.  See Fed. R. Civ.
P. 72(a); *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989).